# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KIM MARIE WILKING,**

    Plaintiff,

    v.                                                                                               Case No. 17-CV-425

**NANCY A. BERRYHILL[1],**
    *Acting Commissioner of Social Security,*

    Defendant.

## DECISION AND ORDER

Kim Marie Wilking alleges disability based on a number of physical and mental impairments. After the Social Security Administration denied her applications for disability benefits, Ms. Wilking requested and received a hearing before an Administrative Law Judge (ALJ). The ALJ determined that Ms. Wilking remained capable of working notwithstanding her impairments. Ms. Wilking now seeks judicial review of that decision.

Ms. Wilking argues that the ALJ erred in finding Ms. Wilking capable of working at a light level with restrictions and that—given her age, education, and past work—she is eligible for disability benefits. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For

---

[1] Nancy A. Berryhill assumed the position of Acting Commissioner of Social Security in January 2017 and, therefore, should be substituted as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

the reasons that follow, the Court finds that the ALJ committed reversible error when he determined that Ms. Wilking is disabled and will remand the case to the Commissioner for further proceedings consistent with this Decision and Order.

I.      **Background**

Kim Wilking was born on May 21, 1962. As of November 25, 2015, Ms. Wilking was unmarried and living alone for approximately the last seventeen years. Transcript 48. Ms. Wilking did not have any income but received occasional loans from her father. Tr. 50. She previously worked in the fast-food industry, a bakery, a factory, and a doctor's office but stopped working in 2011 due to physical and mental ailments. Tr. 53-61. Ms. Wilking current lives in a facility for disabled persons. Tr. 49.

Ms. Wilking suffers from a number of impairments including arthritis, degenerative disc disease, extreme allergies, asthma, hypertension, high cholesterol, heart problems, and anxiety. Tr. 20; Pl.'s Br. 2, ECF No. 13. In June 2013 and August 2013 respectively, Ms. Wilking applied for social security disability insurance and supplemental security income, alleging an onset date of July 15, 2011. Pl.'s Br. 1. After the Social Security Administration denied her applications initially and upon reconsideration, Ms. Wilking requested and received a hearing before an administrative law judge. Tr. 167. Ms. Wilking was represented by counsel at the November 25, 2015, hearing, and at that time she amended her onset date to January 1, 2014. The ALJ heard testimony from Ms. Wilking and a vocational expert. Tr. 40-97.

The ALJ followed the five-step sequential evaluation process and on February 5, 2016, he issued a decision unfavorable to Ms. Wilking. Tr. 18-33. The ALJ determined that (1) Ms. Wilking has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date; (2) Ms. Wilkin suffers from the following sever impairments: degenerative disc disease of the lumbar spine, asthma, and anxiety; and (3) Ms. Wilkin does not suffer from an impairment or combination of impairments that meets or medically equals the severity of a presumptively disabling impairment. Consequently, according to the ALJ, Ms. Wilkin has the residual functional capacity (RFC) to perform light work with the following exceptions or limitations: (a) no climbing of ladders and scaffolds; (b) only occasional stooping, crouching, and climbing of ramps and stairs; (c) no frequent kneeling and crawling; (d) no exposure to unprotected heights or moving mechanical parts; and (e) no concentrated exposure to dust, odors, fumes, and pulmonary irritants, or extreme heat and cold. Ms. Wilking is further limited to performing simple, routine tasks; is limited to making simple work-related decisions; and will be off task less than five percent of the workday, in addition to normal breaks. The ALJ then found that, given this RFC, (4) Ms. Wilking remained capable of performing past relevant work as a fast-food worker and mail sorter; and that (5) Ms. Wilking remained capable of performing the requirements of unskilled, light level occupations. *See* Tr. 20-32. Based on those findings, the ALJ concluded that Ms. Wilking was not disabled.

Thereafter, the Appeals Council denied Ms. Wilking's request for review, Tr. 1-6, making the ALJ's decision the final decision of the Commissioner of Social Security. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Ms. Wilking filed this action on March 22, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1. The matter was reassigned to this Court after both parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 5 & 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Pl.'s Br., ECF No. 13; Def.'s Mem. in Support of the Commissioner's Decision, ECF No. 21; and Pl.' s Reply Br., ECF. No 22.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Judicial review is limited to determining whether the Commissioner's final decision is supported by "substantial evidence." *See* § 405(g); *see also Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore*, 743 F.3d at 1120–21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's decision must be affirmed if it is supported by

4

substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Rather, the Court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Moore*, 743 F.3d at 1121. The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837. Likewise, the Court must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121.

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003).

**III. Discussion**

Ms. Wilking maintains that she is disabled and therefore entitled to disability benefits under the Social Security Act; alternatively she seeks a remand to the Commissioner for further administrative proceedings. Br. 12, 20.

**A. Legal Framework**

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. "The claimant bears the burden of proof at steps one through four." *Id*. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id*.

### B. Legal analysis

Ms. Wilking argues that the ALJ erroneously found her hand impairment to be non-severe, improperly assessed her RFC, improperly evaluated her credibility, and failed to account for certain limitations in the hypothetical posed to the vocational expert. The Court will address each argument in turn.

#### 1. Whether the ALJ erred in determining that Ms. Wilking's hand impairment to be non-severe

Ms. Wilking argues that the ALJ's finding that her dominant right-hand pain does not constitute a severe impairment is unsupported by the record. Step two of the five-step sequential evaluation process requires an ALJ to determine whether the claimant suffers from a medically determinable impairment that is severe. 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is "not severe" must be a slight abnormality that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p. Thus, a determination as to whether an

7

impairment is severe requires an assessment of the functionally limiting effects of the impairment. *Id*.

The Court finds that the ALJ's decision as to the severity of Ms. Wilking's hand is supported by objective and subjective record evidence. In October 2014, an orthopedic specialist diagnosed Ms. Wilking with right wrist De Quervain's Tenosynovitis. Tr. 627. After being treated with a Cortisone shot, Ms. Wilking consistently reported decreasing pain in her hand. Ex. 11F; Ex. 12F. Although she communicated symptoms of soreness in her hand and fingers, Ms. Wilking simultaneously reported that her hand pain is a one out of ten on the pain scale table, and even zero out of ten at times. Tr. 848; Tr. 857; Tr. 932. Ms. Wilking also reported only using her hand brace when very active, and only wearing a splint to help with heavier tasks. *Id*. Further, X-rays of Ms. Wilking's right hand and wrist were unremarkable. Ex. 6F. Finally, as to her daily activities, Ms. Wilking maintained that even though she has trouble picking up things with her right hand, she is nevertheless able to play cards, cut food, and make meals without difficulty. Ex. 12F. Accordingly, there is substantial evidence to sustain the ALJ's finding that Ms. Wilking's hand impairment is non-severe.

**2. Whether the ALJ improperly assessed Ms. Wilking's RFC**

Ms. Wilking argues that the ALJ's RFC assessment of light work with limitations is wrong and that her physical and mental impairments allow only sedentary employment. The Commissioner counters that the ALJ's RFC finding is

supported by substantial evidence, including the clinical findings, the physician opinions of record, and Ms. Wilking's conservative treatment.

An ALJ determines a claimant's RFC in between steps four and five of the five-step sequential evaluation process, assessing the most an individual can still do despite his or her limitations. SSR 96-8p. As part of the RFC assessment, an ALJ must determine the individual's exertional limits; i.e., the individual's strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569(a). The exertional limits are divided into categories: sedentary, light, medium, heavy, and very heavy. *Id*. Here, the ALJ determined that Ms. Wilking is limited to light work with various restrictions.

The ALJ's light work finding is supported by substantial evidence. Ms. Wilking's treatment notes document years of low back pain, neck problems, knee pain, and leg pains, including difficulty walking more than two blocks. Ex. 4A. But her physical examinations consistently show that she has a normal gait, motor strength, and full range of motion in the lower extremities. Exhs. 6F; 17F.

For example, in May 2014, Ms. Wilking's medical records note that there is no deformity of the lower extremities and that her gait is normal even for long distances in the hallway. Tr. 586. Further, Ms. Wilking's physical examination from October 2015 showed full range of motion of the hips without focal tenderness, as well as full range of motion of the knees and ankles. Ex. 17F. Moreover, the ALJ's RFC assessment is consistent with the RFC determinations made by the State agency medical consultants, Dr. Khorshidi and Dr. Greco, and by the State agency

9

psychological consultant, Dr. Musholt. Exhs. 3A; 4A; 5A. Accordingly, the ALJ appropriately assessed Ms. Wilking's RFC, and his determination will not be disturbed.

### 3. Whether the ALJ improperly evaluated Ms. Wilking's credibility

Ms. Wilking argues that the ALJ improperly discredited her testimony about her pain and limitations. When considering a claimant's subjective symptoms, the ALJ must follow a two-step process. *See* Social Security Ruling 16-3p; *See also* 20 C.F.R. § 404.1529. First, the ALJ must determine whether the individual has "a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Second, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms such as pain and determine the extent to which an individual's symptoms limits his or her ability to perform work-related activities." *Id*.

An ALJ's appraisal of claimants' assertions regarding their symptoms "is entitled to deference" and will not be upset unless it is "'patently wrong,'" *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)), or is "divorced from the facts contained in the record," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). "Further, the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citations omitted).

The ALJ here found that Ms. Wilking's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that the alleged intensity of the symptoms and their impact on functioning were not consistent with the totality of the evidence. Tr. 25. Ms. Wilking maintains that the ALJ improperly discredited her subjective claims by placing unwarranted weight on instances of noncompliance and by failing to appreciate the context in which her daily activities occurred. These criticisms are valid and necessitate remand.

This case presents the common situation in which an ALJ must assess the credibility of claimants' assertions regarding their actual limitations because medical records alone fail to justify the claimed limitations. In making this credibility determination, an ALJ is permitted to start with the medical records, but an ALJ may not rely on the records alone to reject claimants' assertions. *Hildebrandt v. Astrue*, 2012 U.S. Dist. LEXIS 61842, *27 (E. D. Wis. 2012). Accordingly, an ALJ must provide some justification beyond medical records to overcome claimants' assertions regarding their limitations.

The ALJ was on solid ground in finding that the medical records did not substantiate Ms. Wilking's assertions regarding her limitations. The ALJ noted that the medical records documented unremarkable physical examinations, Ex. 6F; a normal gait, full range of motion, and mobility in all four extremities, Exhs. 4F; 6F, 15F; multiple reports of no pain, Ex. 4F; and routine and conservative treatment. The medical records were therefore inconsistent with Ms. Wilking's allegations of pain. Tr. 25-27.

This finding alone, of course, would not permit the ALJ to reject Ms. Wilking's claims. The ALJ therefore based his decision on two additional factors that he believed undercut Ms. Wilking's credibility: alleged noncompliance with measures that any reasonable person would have followed to alleviate her purported symptoms and daily activities that Ms. Wilking could not have conducted if she truly suffered as she claimed. Each is addressed below.

*Noncompliance.* The ALJ found that Ms. Wilking failed to take prescribed medicine and was unwilling to stop smoking despite her doctor's recommendation. Tr. 27. From this, the ALJ concluded that "the claimant's failure to earlier pursue recommended treatment measures demonstrates a possible unwillingness to do what is necessary to improve her condition, and may also be an indication that her symptoms are not as severe as she purports." Tr. 27.

The ALJ's conclusion is mistaken. As to failing to take prescription medications, part of the record does confirm Ms. Wilking's noncompliance. Tr. 27. But another part of the record drains this noncompliance of relevance—Ms. Wilking's doctor explained that Ms. Wilking "ran out of money" and "cannot afford all of her medications." Tr. 408. The ALJ thus neglected to heed the Seventh Circuit's caution that even though "failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference*." Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012).

As to the significance of Ms. Wilking's smoking, here again the Seventh Circuit has counseled that it is impermissible for an ALJ to rely on failure to quit smoking as a basis for a credibility determination "given the addictive nature of smoking." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (holding that, because smoking is so addictive, failing to quit is likely attributable to other factors and not to a lack of credibility regarding the severity of a claimant's symptoms).

*Daily activities.* The ALJ found that Ms. Wilking reported being able to engage in a number of normal day-to-day activities such as tending to her personal care, preparing simple meals, independently using public transportation, doing puzzles, managing her finances, and taking walks for approximately 20 minutes a day. Tr. 28-29. The ALJ then found that "the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of disabling functional limitations." Tr. 29.

It is generally permissible for an ALJ to rely on a claimant's daily activities when making a credibility determination. SSR 16-3p. At the same time, it is incumbent on an ALJ to report those daily activities accurately and fulsomely. That did not occur. For example, the ALJ stated that Ms. Wilking was able to independently use public transportation; yet, in the hearing before the ALJ, Ms. Wilking testified that she had tried using public transportation but found it impossible because, even when the driver lowers the bus, she could not lift her legs high enough to get on board. Tr. 51. In a similar vein, the ALJ discussed Ms. Wilking's ability to do puzzles and play card games, but failed to mention Ms.

13

Wilking's testimony that it takes her months to complete a puzzle due to pain from sitting for too long. Tr. 70. The ALJ also relied on Ms. Wilking's ability to go for 20 minute walks everyday despite the pain in her legs, back, and spine, Tr. 29. Absent from his decision is any mention that her walks (as well as the other activities she engaged in) chiefly took place within her assisted living facility, which was designed for persons with disabilities and equipped with level floors and railings to provide support during ambulatory activity. Tr. 75-76.

Because the purported issues with noncompliance and with daily activities fail, under closer examination, to support the ALJ's refusal to credit Ms. Wilking's description of her limitations, the ALJ's credibility determination is patently wrong. Accordingly, the Court cannot conclude that the ALJ "reached his decision in a rational manner, logically based on his specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citations omitted). The Court therefore finds that the ALJ committed reversible error when evaluating Ms. Wilking's credibility.

   4. **Whether the ALJ erred by not accounting for certain limitations in the hypothetical posed to the vocational expert**

Ms. Wilking argues that the ALJ failed to account for her mental limitations in the hypothetical posed to the vocational expert. At steps four and five of the sequential evaluation process, an ALJ is required to determine (a) whether a claimant's impairments prevent her from doing her past relevant work and (b) whether the claimant's impairments prevent her from performing other work that exists in the national economy, considering her RFC. *See* SSR 00-4p. To make these

14

findings, an ALJ may ask a vocational expert to "offer expert testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments(s) can meet the demands of the claimant's previous work." 20 C.F.R. § 416.960(b)(2). An ALJ is required to use the same RFC assessment when deciding if the claimant can adjust to any other work. *See* § 416.960(c).

With regard to Ms. Wilking's mental limitations, the ALJ posed a hypothetical to the vocational expert asking her to assume that the individual in question would be limited to performing simple, routine tasks; making simple work-related decisions; and being off task less than five percent of the time in an eight-hour workday. Tr. 90. Ms. Wilking maintains that the ALJ's hypothetical question was flawed because it failed to account for her moderate limitations in the areas of concentration, persistence, or pace. The Court agrees with Ms. Wilking.

It is well settled in this circuit that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). "Among the mental limitations that the vocational expert must consider are deficiencies of concentration, persistence, or pace." *Id.*

Ms. Wilking's medical records document her anxiety, attention abnormalities, and preoccupations. Tr. 1157-1164. In his RFC assessment, the ALJ found that Ms. Wilking has moderate difficulty in concentration, persistence, or pace due to record evidence reflecting "greater symptoms of anxiety, including difficulty with

15

concentration and memory." Tr. 30. The ALJ's hypothetical, however, made no mention of Ms. Wilking's moderate limitations in concentration, persistence, or pace. Instead, the ALJ asked the vocational expert to assume only that an individual was limited to performing simple, routine tasks. Tr. 90. To be sure, an ALJ is not required to use the exact terminology of "concentration, persistence, or pace" in a hypothetical. Nevertheless, the court has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks . . . adequately captures . . . limitations in concentration, persistence, and pace." *Varga*, 794 F.3d at 814. The ALJ's failure to capture these key limitations in the hypothetical posed to the vocational expert mandates remand.

**IV. Conclusion**

For all the foregoing reasons, the Court finds that the ALJ committed reversible error in determining that Ms. Wilking was not disabled as of January 1, 2014. The Court therefore will reverse that part of the ALJ's decision denying Ms. Wilking's claim for disability benefits and remand the case to the Commissioner for further proceedings consistent with this Decision and Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

16

Dated at Milwaukee, Wisconsin, this 27th day of September, 2018.

                                          **BY THE COURT:**

                                *s/ David E. Jones*
                                DAVID E. JONES
                                United States Magistrate Judge